**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHRYN M. ROBINSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br>ONSTAR, LLC and DOES 1 through 50,<br><br>Defendant. | CASE NO. 15cv1731-WQH-BGS<br><br>ORDER |

HAYES, Judge:

    The matters before the Court are the Amended Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) and to Compel Arbitration (ECF No. 38)[1] filed by Defendant, the Motion in Limine filed by Plaintiff (ECF No. 31), and the Motion to Strike filed by Plaintiff (ECF No. 36).

**I. Procedural Background**

    On July 2, 2015, Plaintiff Kathryn Robinson commenced this action by filing the Class Action Complaint in the San Diego County Superior Court. (ECF No. 1-2 at 6). Plaintiff seeks to represent a nationwide and/or California class of OnStar Telematics Services ("OTS") customers whose bank or credit card accounts OnStar were allegedly charged without first obtaining all authorizations required by law. The Complaint asserts four causes of action: (1) violation of the Electronic Funds Transfer Act

---

[1] The Court denies Defendant's Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) and to Compel Arbitration (ECF No. 15) as moot.

1  ("EFTA"), 15 U.S.C. § 1693 *et seq.*; (2) violation of the Automatic Renewal Law
2  ("ARL"), California Business and Professions Code § 17600, *et seq.*; and (3) and (4)
3  two violations of the Unfair Competition Law ("UCL"), California Business and
4  Professions Code § 17200, *et seq.*

On August 4, 2015, Defendant OnStar removed this action to this Court based on the existence of federal question, 28 U.S.C. § 1331, and pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (ECF No. 1).

On September 11, 2015, Defendant filed the Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) and to Compel Arbitration (ECF No. 15) and Request for Judicial Notice[2] (ECF No. 15-5). On October 26, 2015, Plaintiff filed an opposition to the Motion to Compel Bilateral Arbitration (ECF No. 18) and objections to Defendant's Request for Judicial Notice (ECF No. 18-3). On November 9, 2015, Defendant filed a reply. (ECF No. 19).

On April 19, 2016, the Court held an evidentiary hearing to address whether OnStar or GM sent a copy of the OnStar Terms and Conditions to Plaintiff by mail; and whether the OnStar Terms and Conditions were available to Plaintiff on the website of OnStar when she activated OTS.[3] On April 19, 2016, Plaintiff filed a motion in limine seeking to strike evidence expected to be proffered at the evidentiary hearing. (ECF No. 31).

On May 24, 2016, Defendant filed a post-hearing brief. (ECF No. 35). On the same day, Plaintiff filed a post-hearing brief and a Motion to Strike. (ECF No. 36).

---

[2] Defendant requested that the Court take judicial notice of two documents attached to the Declaration of Nicholis S. Festa: (1) Exhibit A, which is a copy of the GM Customer Incentive and OnStar Acknowledgment signed by Plaintiff's husband, Scott Robinson, in connection with his December 2013 vehicle lease and (2) Exhibit B, which is a copy of the OnStar Terms and Conditions in effect at the time the Robinsons leased their vehicle in December 2013. (ECF No. 15-5). Both documents were admitted into evidence during the evidentiary hearing, therefore the Court denies Defendant's request for Judicial Notice as moot.

[3] Prior to the hearing, the parties stipulated for purposes of this motion that a copy of the OnStar Terms and Conditions was not in the glove box of the leased vehicle. (ECF No. 30 at 2).

1   On June 3, 2016, Defendant filed an Amended Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) and to Compel Arbitration. (ECF No. 38). On June 7, 2016, Plaintiff filed a response to Defendant's post-hearing brief. (ECF No. 40). On June 17, 2016, Defendant filed a response to Plaintiff's post-hearing brief. (ECF No. 41). On June 24, 2016, Defendant filed a reply. (ECF No. 43). On August 2, 2016, Plaintiff filed a notice of supplemental authority. (ECF No. 44). On August 8, 2016, Defendant file a response. (ECF No. 45).

**II. Factual Background**

On December 15, 2013, Plaintiff's husband leased a new 2014 Cadillac ATS sedan ("Cadillac"). The Cadillac was equipped with OTS, which includes emergency assistance, hands-free calling, and navigation. The Cadillac lease came with a one-year period of free OTS. To activate the free trial, a customer had to press the blue OnStar button on the rearview mirror of the car, which would initiated a cellular telephone call with OnStar. Plaintiff's husband signed a GM Customer Incentive and OnStar Acknowledgment form ("OTS Acknowledgment").[4] Plaintiff testified that she sat next to her husband when he signed the OTS Acknowledgment. (ECF No. 47 at 27:12-21). The OTS Acknowledgment provides,

> OnStar Terms and Conditions Acknowledgment
> I acknowledge that I have received the Terms and Conditions applicable to the OnStar Services. Copies are available in my vehicle glove box, from my dealer, at www.onstar.com or by contacting OnStar directly.
>
> Cancellation of OnStar Services
> I acknowledge that the OnStar services are provided under a continuous service contact that will remain in effect until cancelled by me or OnStar. I understand that to request cancellation of OnStar services, I must press the blue OnStar button in my car or call 1.888.4ONSTAR.
>
> Payment Methods

---

[4] Plaintiff concedes that her husband signed the acknowledgment form, but contends that the form should be "stricken as irrelevant and immaterial to this Court's determination of whether OnStar formed an agreement to arbitrate with" Plaintiff. (ECF No. 36-1 at 10). The Court finds the acknowledgment form relevant and denies Plaintiff's Motion to Strike the acknowledgment form.

> Unless I indicate otherwise to OnStar, I understand that if I provide OnStar with my credit or debit card information at any time, it will be . . . automatically charged when payment for my OnStar Plan becomes due (at the then current rate).

(ECF No. 38-3 at 2).

Plaintiff testified that a few days later, on or about December 17, 2013, she activated the OTS by pressing the blue OnStar button located on the Cadillac's rearview mirror, which initiated a cellular telephone call to OnStar. Plaintiff testified that during the call with OnStar she gave her debit card number to the OnStar agent to purchase some minutes. On December 17, 2014, after the one-year free OTS trial period, OnStar withdrew $29.90 from Plaintiff's bank account using her debit card account number. This occurred again from January-March 2015. Upon noticing the charges for the first time in March 2015, Plaintiff called OnStar and cancelled her account.

At the evidentiary hearing, Plaintiff testified that she was not aware that the OTS was subject to Terms and Conditions. Plaintiff testified that she was not aware that the OnStar Terms and Conditions contained an arbitration provision. Plaintiff testified that she found a copy of the OnStar Terms and Conditions in her home office and that "[i]t was folded into a letter from US Bank." (ECF No. 47 at 17:18-20). Plaintiff testified that the letter, dated January 8, 2014, concerned insurance for the Cadillac, and that she did not take the letter out of the envelope. Plaintiff testified that she did not see the OnStar Terms and Conditions until she was asked by her attorney to look for documents related to the Cadillac lease or OnStar.

The OnStar Terms and Conditions[5] states in part,

> HOW WE'LL RESOLVE DISPUTE BETWEEN US. If you and we have a disagreement related to **OnStar** service, we'll try to resolve it by talking with each other. If we can't resolve it that way, **WE BOTH AGREE, TO THE FULLEST EXTENT PERMITTED BY LAW, TO USE CONFIDENTIAL ARBITRATION, NOT LAWSUITS** (expect for small claims court cases) **TO RESOLVE THE DISPUTE.**

---

[5] Prior to the hearing, the parties stipulated that the OnStar Terms and Condition attached to the Festa Declaration (ECF No. 15, Exhibit B) was in effect when Plaintiff activated OTS. (ECF No. 30 at 2).

(ECF No. 38-5 at 5 ¶ 39).  The OnStar Terms and Conditions also states,

> 2. PAYMENT. If you have a credit or debit card account or similar payment account on file with us, we'll automatically charge it monthly if you have not otherwise prepaid your subscription. . . .
>
> 3. STARTING YOUR **OnStar** SERVICE. You can only get and use **OnStar** service by accepting this agreement. [Y]ou accept this agreement and start your **OnStar** service when . . . you speak with and **OnStar advisor** and register for **OnStar** service, OR when you (or someone you authorize to use your Car) use the **OnStar** service or accept any of its benefits (including using a Car with active **OnStar Equipment**). If you do **ANY** one or more of these four things to accept, you're bound by this agreement . . . .
>
> 4. DURATION OF YOUR **OnStar** SERVICE. Your **OnStar** service starts as set out above and continues without end until you or we cancel the service as allowed in this agreement.
>
> 5. ENDING YOUR **OnStar** SERVICE. You can cancel your **OnStar** service at any time. All you have to do is call us or press the blue **OnStar** button in your Car and tell an **OnStar** Advisor you want to cancel service . . . .

*Id.* ¶¶ 2-5.

### III. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that arbitration agreements generally shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Where grounds "exist at law or in equity for the revocation of any contract, "courts may decline to enforce such agreements. *Id.* A party seeking to compel arbitration under the Federal Arbitration Act ("FAA") must prove, by a preponderance of the evidence: (1) the existence of a valid written agreement to arbitrate in a contract; and (2) that the agreement to arbitrate encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

#### A. Contentions of the Parties

Defendant contends that Plaintiff "received or had access to the OnStar Terms and Conditions that contained the arbitration provision."  (ECF No. 38-1 at 8).

1  Defendant contends that Plaintiff's claims fall within the scope of that provision.
2  Defendant asserts that Plaintiff had a copy of the OnStar Terms and Conditions and
3  whether she chose to read the terms "is irrelevant." *Id.*
4      Plaintiff contends that the parties have no agreement to arbitrate because Plaintiff
5  did not assent to be bound by the OnStar Terms and Conditions. (ECF No. 41).
6  Plaintiff contends that the Acknowledgment form signed by Plaintiff's husband does
7  not adequately incorporate the Terms and Conditions by reference and cannot bind
8  Plaintiff. Plaintiff contends that even if a valid agreement existed, it is unconscionable.

### B. Receipt of Arbitration Agreement

The Court held an evidentiary hearing to determine whether Plaintiff had access to a copy of the OnStar Terms and Conditions. At the evidentiary hearing, the Court addressed two evidentiary issues: (1) whether OnStar or GM sent a copy of the OnStar Terms and Conditions to Plaintiff by mail; and (2) whether the OTS Terms and Conditions were available to Plaintiff on the website of OnStar when she activated OTS. *See* ECF No. 30. Plaintiff testified that she found a copy of the OnStar Terms and Conditions in her home office and that "[i]t was folded into a letter from US Bank." (ECF No. 47 at 17:18-20). Plaintiff testified that the letter, dated January 8, 2014, concerned insurance for the Cadillac. *Id*. at 18:2-7. The Court finds Plaintiff's testimony that she believed that US Bank somehow got a copy of the OTS Terms and Conditions and mailed them to her not credible. The Court finds that the evidence at the evidentiary hearing supports the conclusion that Plaintiff received a copy of the OnStar Terms and Condition.[6]

### C. Validity of the Arbitration Agreement

"Arbitration is a product of contract. Parties are not required to arbitrate their disagreements unless they have agreed to do so." *Davis v. Nordstrom, Inc*., 755 F.3d 1089, 1092 (9th Cir. 2014). When determining whether a valid contract to arbitrate

---

[6] Because the Court does not rely on OnStar's website or mailing evidence to reach its conclusion, the Court denies Plaintiff's Motion in Limine (ECF No. 31) and Motion to Strike (ECF No. 36) as moot.

exists, the courts apply state law principles. *Id*. "It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014). "Mutual assent may be manifested by written or spoken words, or by conduct and acceptance of contact terms may be implied through action or inaction." *Id*. (internal citations and quotation marks omitted). "Thus, an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Id.* (internal quotation marks omitted). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id*.

In *Knutson*, the plaintiff purchased a vehicle from Toyota that included a 90-day trial subscription to Sirius XM satellite radio. 771 F.3d at 561-62. About a month after his trial subscription was activated, the plaintiff received a "Welcome Kit" from Sirius that included a Customer Agreement with an arbitration agreement. *Id*. The plaintiff stated that he did not read the Customer Agreement and was unaware of the arbitration clause. In denying the motion to compel arbitration, the Ninth Circuit Court of Appeals held that "[a] reasonable person in [the plaintiff's] position could not be expected to understand that purchasing a vehicle from Toyota would simultaneously bind him or her to any contract with Sirius XM, let alone one that contain an arbitration provision without any notice of such terms." *Id*. at 566. The court concluded,

> Nothing in the record . . . indicates that Sirius XM's offer was clearly and effectively communicated to Knutson by mailing him the Customer Agreement. Knutson would only have had notice of his opportunity to cancel his subscription, or the effect of his continued use of the service, if he opened the Welcome Kit from Sirius and read all of the documents therein, which—in view of his lack of awareness of any contractual relationship with Sirius—he had no reason to do.

*Id*.

In this case, Plaintiff had notice that the Cadillac came with a one-year free trial of OTS and that in order to activate the free trial she had to press the blue OnStar button located on the Cadillac's rearview mirror, which activated a cellular telephone

call to OnStar. During that call, Plaintiff gave OnStar her debit card information to purchase minutes. Unlike in *Knutson*, where the car came with the free trial without the plaintiff activating the service, Plaintiff in this case had to contact OnStar to activate the free trial. *See e.g. Knutson*, 771 F.3d at 565. By contacting OnStar directly to activate the free trial of OTS, Plaintiff had notice that she was entering into a contractual relationship with OnStar. *See e.g.*, *Bischoff v. DirecTV, Inc.,* 180 F. Supp. 2d 1097, 1101 (C.D. Cal. 2002) (Compelling arbitration where the plaintiff specifically elected to receive the service directly from the service provider). Unlike *Knutson*, Plaintiff gave OnStar her debit card number and purchased minutes from OnStar which further supports the conclusion that Plaintiff had notice that she was entering into a contractual relationship with OnStar. *See Knutson*, 771 F.3d at 567 ("Here, by contrast [of *Bischoff*] there is no evidence that [the plaintiff] purchased anything from Sirius XM, or even knew that he was entering into a contractual relationship with the satellite radio service provider."). Even if Plaintiff was unaware of all of the terms of OnStar's offer for a free one-year trial, by activating the services Plaintiff accepted OnStar's offer. *See Knutson*, 771 F.3d at 565 ("[A]n offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.").

After activating the OTS, Plaintiff received a copy of the OnStar Terms and Condition. The Terms and Conditions state that any dispute shall be resolved by arbitration. If Plaintiff disagreed with those terms, she could have cancelled her services, but she did not. *See* Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."). The Court finds that Defendant has proved by a preponderance of the evidence that Plaintiff received a copy of the OnStar Terms and Conditions and assented to those terms, including the arbitration agreement. *See* Cal. Civ.Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising

from it, so far as the facts are known, or ought to be known, to the person accepting."). The Court finds that the arbitration agreement encompasses the dispute at issue

### C. Unconscionability

"Under the FAA savings clause, state law that arose to govern issues concerning the validity, revocability, and enforceability of contracts generally remains applicable to arbitration agreements." *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quotation omitted). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ." *Id.* (quotation omitted). "Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *Id.* (citing *Armendariz Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal.4th at 114. "[T]he party opposing arbitration has the burden of proving the arbitration provision is unconscionable." *Higgens v. Superior Court*, 140 Cal. App. 4th 1238, 1249 (2006) (quotation omitted).

"An evaluation of unconscionability is highly dependent on context. . . . The doctrine often requires inquiry into the commercial setting, purpose, and effect of the contract or contract provision." *Sanchez*, 61 Cal. 4th at 911. Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* at 910. "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* at 912. "As with any contract, the unconscionability inquiry requires a court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1146 (2013). "The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do

not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." *Sanchez*, 61 Cal. 4th at 911-12 (internal citations and quotation marks omitted).

### i. Substantive Unconscionability

Plaintiff contends that the arbitration agreement is substantively unconscionable because it allows OnStar to unilaterally modify the terms and it has a 60-day limitations period for disputes relating to charges. Plaintiff contends that it is unconscionable because it has a prohibition on attorney's fees, restricts remedies, and contains a broad confidentiality agreement. Defendant contends that the arbitration agreement is not substantively unconscionable because California courts have enforced arbitration agreements that limit fees and remedies and have confidentiality requirements.

"Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Kilgore*, 718 F.3d 1052, 1058 (quotation omitted). "The term [substantive unconscionability] focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Davis v. O'Melveny & Myers*, 458 F.3d 1066, 1075 (9th Cir. 2007) (quotations omitted), *overruled on other grounds by Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 960 (9th Cir. 2012). Substantive unconscionability "turns not only on a one-sided result, but also on an absence of a justification for it." *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (1982) (quotation omitted). "[T]he standard for substantive unconscionability–the requisite degree of unfairness beyond merely a bad bargain–must be as rigorous and demanding for arbitration clauses as for any contract clause." *Sanchez*, 61 Cal.4th at 912.

The Court of Appeals for the Ninth Circuit has "found confidentiality provisions to be substantively unconscionable when applied to a large class of customers." *Kilgore*, 718 F.3d at 1059 n. 9 (citing *Ting v. AT&T*, 319 F.3d 1126, 1151–52 (9th Cir.2003)); but cf. Concepcion, 131 S.Ct. at 1749 (an arbitration agreement "can be specified, for example, ... that proceedings be kept confidential to protect trade

secrets"); *Mercuro v. Superior Court*, 116 Cal. Rptr .2d 671 (Ct. App. 2002) ("While [the California] Supreme Court has taken notice of the 'repeat player effect,' the court has never declared this factor renders the arbitration agreement unconscionable per se.").

In this case, the agreement states that the agreement may be changed by OnStar "by giving you 30 days notice (or a longer period if required by law). (ECF No. 38-5 ¶ 9). Plaintiff does not contend that Defendant has modified the Agreement. Under these circumstances, we conclude that "the implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and save that agreement from being illusory and thus unconscionable. *See Peng v. First Republic Bank*, 162 Cal. Rptr. 3d 545, 554 (Ct. App. 2013). The agreement states that any objections to fees must be brought to OnStar's attention within 60 days, *unless* "the law does not allow a limit or the law requires a longer period." *Id*. ¶ 24. The agreement limits recovery of fees, liability, remedies "UNLESS FORBIDDEN BY LAW." *Id* ¶ 36. After reviewing the arbitration agreement, the Court finds that the agreement is not substantively unconscionable as it is not "so one-sided as to shock the conscience." *See Davis*, 458 F.3d at 1075.

### ii. Procedural Unconscionability

Plaintiff contends that the arbitration agreement is procedurally unconscionable because it is a contract of adhesion. Plaintiff asserts that it is unconscionable because surprise "is also present." (ECF No. 41 at30.) Specifically, Plaintiff asserts that the arbitration clause is contained in paragraph thirty-nine of a fifteen page pamphlet and does not provide the arbitration rules. Plaintiff asserts that the agreement is unconscionable because OnStar can unilaterally change the rules. Defendants contends that the arbitration agreement is not procedurally unconscionable because contracts of adhesion are routinely enforced and there is no element of surprise.

"Procedural unconscionability focuses on the factors of surprise and oppression." *Kilgore*, 718 F.3d at 1059 (quotation omitted). "'Oppression arises from an inequality

of bargaining power that results in no real negotiation and an absence of meaningful choice,' while '[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)).

A contract "will be denied enforcement if, considered in its context, it is unduly oppressive . . . ." *Armendariz*, 24 Cal. 4th at 113. Contracts of adhesion signed by a weaker party in oppressive circumstances may contribute to a finding of procedural unconscionability. *See Sanchez*, 61 Cal.4th at 915; *see also Higgens v. Superior Court*, 140 Cal. App. 4th 1238, 1248 (2006) ("a contract of adhesion is a standardized contract that is imposed and drafted by the party of superior bargaining strength and relegates to the other party only the opportunity to adhere to the contract or reject it").

The arbitration agreement in this case is written in simple language that can be understood by an ordinary user. The agreement is written with words in bold and in all-capitals to highlight the important terms. The agreement includes reference to arbitration rules that would apply to any dispute and states that OnStar will pay the cost of any filing fee and any "further administrative and arbitrator fees." (ECF No. 15-4 at 5). After review, the Court concludes that the arbitration agreement includes terms that are material to ensuring the agreement is reasonable fair to both parties. The arbitration agreement is not procedurally unconscionable.

**IV. Conclusion**

The Court finds that Defendant has proved by a preponderance of the evidence that Plaintiff received a copy of the OnStar Terms and Conditions and assented to those terms, including the arbitration agreement. The Court finds that the arbitration agreement is not substantively or procedurally unconscionable. Defendant's motion to compel arbitration is granted.

IT IS HEREBY ORDERED that Defendant's Amended Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) and to Compel Arbitration (ECF No. 38) is

granted. Pursuant to 9 U.S.C. section 4, the parties are directed to proceed to arbitration in accordance with the terms of the DRA. Pursuant to 9 U.S.C. section 3, the claims of the following Opt-ins are STAYED in favor of arbitration

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) and to Compel Arbitration (ECF No. 15), Plaintiff's Motion In Limine (ECF No. 31), and Plaintiff's Motion to Strike (ECF No. 36) are denied as moot.

DATED: August 25, 2016

**WILLIAM Q. HAYES**
United States District Judge