1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN M. ROBINSON, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>ONSTAR, LLC; and DOES 1 through 50, inclusive,<br><br>                                    Defendants. | Case No.:  15-CV-1731 JLS (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND TO MODIFY CLASS ALLEGATIONS**<br><br>(ECF No. 73) |

Presently before the Court is the Motion for Judgment on the Pleadings and Motion to Modify Class Allegations ("Mot.," ECF No. 73) filed by Defendant OnStar, LLC ("OnStar").  Also before the Court are Plaintiff Kathryn M. Robinson's Opposition to ("Opp'n," ECF No. 83) and Defendant's Reply in Support of ("Reply," ECF No. 86) the Motion.  The Court vacated the hearing on the Motion and took the matters under submission without oral argument. Having carefully considered the parties' pleadings, arguments, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion as follows.

## BACKGROUND

### I.    Defendant OnStar

OnStar is a fully owned subsidiary of General Motors LLC that provides a hands-free calling, navigation, and emergency assistance service called OnStar Telematics

Service ("OTS").  *See* Class Action Compl. ("Compl."), ECF No. 1-2, ¶¶ 1, 6, 14.  OTS equipment and software comes installed in most General Motors-manufactured vehicles, including Chevrolet, Buick, and Cadillac.  *Id.* ¶ 17.  OTS is also available as an aftermarket product and service for those who install OnStar For My Vehicle ("FMV").  *Id.*  OTS calling services are routed on AT&T's cellular network, so OnStar resells AT&T cellular network minutes to those using OTS.  *Id.* ¶ 6.

OnStar offers its OTS both to those registering for a free trial period, which can last for several months up to one year, *id.* ¶ 15, and to those who pay for a subscription.  *Id.* ¶ 14.  Those who register for a free, initial trial period of OTS may register their vehicles' OTS equipment with OnStar by (1) pressing a blue OnStar button on the rearview mirror, which initiates a cellular telephone call to an OnStar agent; (2) calling OnStar's toll-free number; or (3) visiting OnStar's website.  *Id.* ¶ 15.  Once the free initial period has concluded, registrants may subscribe to continue to have access to OTS by paying a monthly fee, which can range between $19.99 and $34.99 per month depending on the service.  *Id.* ¶ 16.  Approximately fifty percent of registrants for the free trial period elect to subscribe to OTS.  *Id.* ¶ 17.

OnStar has approximately 6 million active subscribers in the United States, and Plaintiff estimates that approximately 360,000 of these subscribers are located in California.  *Id.*

## II.    Plaintiff's Experience with Defendant OnStar

On December 15, 2013, Plaintiff's husband, Scott Robinson, leased a new 2014 Cadillac ATS sedan (VIN 1G6AA5RX0E0103492) (the "Vehicle") from Hoehn Buick GMC Cadillac in Carlsbad, California.  Compl. ¶ 18.  Plaintiff accompanied her husband to the dealership, *id.*, and has a community property interest in the Vehicle lease agreement and is the person who primarily operates the Vehicle.  *Id.* ¶ 19.  Plaintiff sat next to her husband as he signed several documents pertaining to the lease of the Vehicle.  *See* ECF

/ / /

/ / /

No. 71 ("Ans.") ¶ 18 (quoting ECF Nos. 35-11, 47 ("Tr.") at 26:6–27:21).[1]  Among these document was the GM Customer Incentive and OnStar Acknowledgment, *see* Ans. ¶ 26, in which Mr. Robinson acknowledge that (1) he had "received the Terms and Conditions applicable to the OnStar Services"; (2) "the OnStar services [we]re provided under a continuous service contract that w[ould] remain in effect until cancelled by [him] or OnStar"; (3) "if [he] provid[ed] OnStar with [his] credit or debit card information at any time, it w[ould] be kept securely on file and w[ould] be automatically charged when payment for [his] OnStar Plan bec[a]me[] due"; and (4) "[n]otice of the payment due date, the monthly amount due and how to update or remove [his] credit or debit card information w[ould] be provided at least 30 days prior to any charges." *Id.*; *see also* Tr. at 8:18–9:7, 26:6–28:9; ECF No. 35-2 ("Ex. 1-A").

The Vehicle was outfitted with the equipment and software to access OTS and came with a one-year period of free OTS.  Compl. ¶ 20.  The dealer told Plaintiff that, to activate the one year of free access to OTS, she would have to register the Vehicle with OnStar from inside the vehicle.  *Id.* ¶ 21; *see also* Tr. at 28:15–29:19.

/ / /

---

[1] On a motion for judgment on the pleadings, as here, the Court may take into account the parties' pleadings and any documents physically attached to those pleadings or incorporated by reference. *See, e.g.*, *Gonzalez v. Planned Parenthood of L.A.*, No. CV 05-8818 AHM FMOX, 2011 WL 1481398, at *2 (C.D. Cal. Apr. 19, 2011).  Although the defendant generally "cannot rely on factual allegations contained in the answer . . . [because] all allegations in the answer are automatically deemed denied," Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-E, OnStar cites to the transcript of Plaintiff's testimony at an April 19, 2016 evidentiary hearing in responding to Plaintiff's allegations. *See generally* Ans.  In ruling on OnStar's Motion, the Court may consider Plaintiff's testimony, as incorporated by reference into OnStar's Answer, which constitutes a binding judicial admission. *See, e.g.*, *Yagman v. Allianz Ins.*, No. LACV1500921JAKJCX, 2015 WL 5553462, at *3 (C.D. Cal. July 9, 2015) (granting Rule 12(b)(6) motion to dismiss on the basis of statement made by the plaintiff at oral argument); *see also Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. SACV141645DOCRNBX, 2015 WL 13310465, at *3 (C.D. Cal. Jan. 22, 2015) (judicial admissions may be considered in ruling on a motion to dismiss pursuant to Rule 12(b)(6)), *aff'd*, 677 F. App'x 336 (9th Cir. 2017); *Baez v. Falor*, No. CIV.A. 09-1149, 2011 WL 5406148, at *6 (W.D. Pa. Sept. 21) (testimony from evidentiary hearing may be considered in resolving motion for judgment on the pleadings), *report and recommendation adopted*, 2011 WL 5374986 (Nov. 8, 2011).

On December 17, 2013, Plaintiff pressed the blue OnStar button on the Vehicle's rearview mirror, initiating a cellular telephone call to an OnStar agent.  Compl. ¶ 22.  During the call with a live OnStar agent, Plaintiff registered the Vehicle to receive free OTS.  *Id.*  At no time during that call did the OnStar agent mention that there were terms or conditions to receive the free OTS, nor did the agent read or refer to any terms or conditions.  *Id.*  The agent also did not inform Plaintiff that she would be required to agree to pay for OTS after the free OTS terminated.  *Id.* ¶ 29.  At no time during that call did Plaintiff agree to pay for OTS after the one-year free OTS period expired, *id.* ¶ 23, nor did she agree to automatic renewal of OTS.  *Id.* ¶ 30.

During the registration call, however, Plaintiff did agree to purchase sixty minutes on AT&T's cellular network, minutes that would enable Plaintiff to make calls using OTS rather than her cellular telephone.  *Id.* ¶¶ 24–25.  Plaintiff paid $5.47 for the minutes, providing the OnStar agent with her Bank of America debit card account number.  *Id.* ¶ 25.

After activating OTS, Plaintiff received several documents from OnStar regarding the service and its cancellation, *see* Ans. ¶ 29, specifically:

- Emails dated December 17, 2013, and January 16, 2014, from OnStar Subscriber Services to Plaintiff regarding "OnStar Vehicle Diagnostics report from your Cadillac ATS" and noting that Plaintiff's "Hands-Free Calling" has an "Expiration" of "12/16/2014 (or when OnStar subscription ends, whichever comes first)," *id.*; *see also* Tr. at 31:21–33:18; ECF Nos. 35-8 ("Ex. 10") & 35-9 ("Ex. 11"); and

- A brochure entitled "Terms and Conditions of Your **OnStar** Service Effective as of August, 2010," mailed to Plaintiff's home address, providing, among other things, that "[t]he purchase or lease price of your Car may have included a prepayment for a period of time for a specified **OnStar Plan**.  If so, you must arrange for payment to us after this period of time expires.  If you have a payment account on file with us, we will automatically start charging you monthly as set out above."[2]  Ans. ¶ 29; *see also* Tr. at 16:9–17:20; ECF No. 35-4 ("Ex. 4") (emphasis in original).

---

[2] The Terms and Conditions also provided that "**WE BOTH AGREE, TO THE FULLEST EXTENT PERMITTED BY LAW, TO USE CONFIDENTIAL ARBITRATION, NOT LAWSUITS** (except

On December 17, 2014, OnStar took $29.90 for OTS from Plaintiff's bank account using her debit card account number.  Compl. ¶ 33.  OnStar also debited $29.90 from Plaintiff's bank account in January, and again in February, 2015.  *Id.* ¶ 34.  When Plaintiff first noticed the charges in March 2015, she immediately called OnStar and instructed it to stop taking money from her bank account and to cancel her OnStar account.  *Id.* ¶ 35.  OnStar has not refunded Plaintiff any part of the $89.70 that was debited from her account without her authorization.  *Id.* ¶ 36.

## III.   Other Consumers' Experience with Defendant OnStar

Plaintiff believes that her experience with OnStar was not an isolated incident and that "OnStar engages in a nationwide practice of surreptitiously obtaining consumers' debit and credit card numbers, . . . [t]hen, without obtaining the consumers' written authorization of express informed consent, OnStar charges Registrants' debit and credit cards up to $34.99 every month for purported OTS services."  Compl. ¶ 38.  Plaintiff notes that there are numerous complaints about OnStar's billing practices available on consumer websites.  *See* Compl. ¶ 39.

## IV.   Plaintiff Sues Defendant OnStar

On July 2, 2015, Plaintiff filed a putative class action against OnStar in the Superior Court of the State of California, County of San Diego.  *See generally* ECF No. 1-2.  Plaintiff's Complaint alleged violations of the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA") and the Automatic Renewal Law, California Business and Professions Code §§ 17600 *et seq.* ("ARL"), as well as unlawful and unfair business practices under California Business and Professions Code §§ 17200 *et seq.* ("UCL").  *See generally id.*

OnStar removed to this Court, the Honorable William Q. Hayes, on August 4, 2015.  *See generally* ECF No. 1.  On September 11, 2015, OnStar moved to dismiss Plaintiff's

---

for small claims court cases) **TO RESOLVE THE DISPUTE**."  Tr. at 17:11–17; Ex. 4 (emphasis in original).

Complaint on the grounds that the dispute was subject to an enforceable arbitration agreement. *See* ECF No. 15. Judge Hayes set the matter for oral argument on February 3, 2016, *see* ECF No. 21, after which he set an evidentiary hearing for April 2016, *see* ECF Nos. 21–23, to resolve four material factual disputes, *see* ECF No. 24 at 5:1–8:25; *see also* ECF No. 30, specifically:

> 1. Whether the OnStar Terms & Conditions ("T&C") upon which OnStar base[d] its Motion were in existence at the time Scott Robinson leased the Vehicle ("Issue #1");
>
> 2. Whether a copy of the T&C was in the glovebox of the Vehicle ("Issue #2");
>
> 3. Whether the T&C was available on www.onstar.com at the time of the Vehicle lease ("Issue #3"); [and]
>
> 4. Whether OnStar mailed a copy of the T&C to Plaintiff (["]Issue #4").

ECF No. 30 at 1. The evidentiary hearing was held on April 19, 2016. *See* ECF No. 32.

On August 25, 2016, Judge Hayes granted OnStar's motion to dismiss and to compel arbitration, concluding that "Plaintiff [had] received a copy of the OnStar Terms and Conditions and assented to those terms, including the arbitration agreement." ECF No. 49 at 12. Plaintiff appealed. *See* ECF No. 51.

The Ninth Circuit Court of Appeals reversed on May 1, 2018. *See* ECF No. 62. It determined that Plaintiff and OnStar formed an agreement when she called OnStar to activate her one-year trial subscription, but that the agreement, when formed, did not include the terms and conditions. *Id.* at 2. Consequently, the subsequently mailed terms and conditions, which included the arbitration clause, constituted an offer to modify the agreement, which Plaintiff did not accept. *Id.*

On remand, Judge Hayes recused, and the case was reassigned to this Court. *See* ECF No. 63. OnStar filed is Answer on June 12, 2018, *see generally* ECF No. 71, and the instant Motion followed on July 19, 2018. *See generally* ECF No. 73.

## LEGAL STANDARD

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings attacks the legal sufficiency of the claims alleged in the complaint. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). The Court must construe "all material allegations of the non-moving party as contained in the pleadings as true, and [construe] the pleadings in the light most favorable to the [non-moving] party." *Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

## ANALYSIS

OnStar requests that the Court enter judgment on the pleadings on Plaintiff's claims for violation of the EFTA on the grounds that she has denied the existence of any agreement establishing a preauthorized electronic fund transfer, for violation of the ARL on the grounds that the statute does not confer a private right of action, and for violation of the UCL on the grounds that OnStar's conduct was not unlawful and that Plaintiff consented to be charged for OTS and failed to avoid or mitigate the alleged harm. *See* Not. of Mot.; *see also* Mot. at 1–2. Alternatively, and to the extent that the Court declines to dismiss Plaintiff's EFTA claim, OnStar requests that the Court modify Plaintiff's class allegations pursuant to Federal Rule of Civil Procedure 23 on the grounds that the Court lacks jurisdiction over claims of alleged class members who are not California citizens concerning actions unrelated to California and Plaintiff cannot maintain a class action for actual damages under EFTA. *See* Not. of Mot.; *see also* Mot. at 2–3.

## I.      Motion for Judgment on the Pleadings

### A.      *First Cause of Action: Violation of the Electronic Funds Transfer Act*

Plaintiff's first cause of action alleges that OnStar violated Section 1693(a) of the EFTA by "uniformly and routinely initiat[ing] preauthorized electronic fund transfers and t[aking] money from the bank accounts of Plaintiff and members of the Nationwide EFTA Class without obtaining their written authorization for the transfers."  Compl. ¶¶ 56, 58. Section 1693e(a) provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."  The EFTA defines a "preauthorized electronic fund transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10).

OnStar argues that Plaintiff's EFTA claim must be dismissed because "Plaintiff alleges that she did not enter into any electronic fund transfer agreement" and "[a] natural reading of the EFTA provides that it is limited to transfers pursuant to agreement."  Mot. at 6.  In support of its argument, OnStar points to the Federal Reserve's Official Staff Interpretation, which provides:

> The requirements of the regulation apply only to an account for which an agreement for EFT services to or from the account has been entered into between:
>
> i.      The consumer and the financial institution (including an account for which an access device has been issued to the consumer, for example);
>
> ii.      The consumer and a third party (for preauthorized debits or credits, for example), when the account-holding institution has received notice of the agreement and the fund transfers have begun.

Mot. at 6 (emphasis omitted) (quoting 12 C.F.R. Pt. 205, Supp. I § 205.3(a)).  OnStar maintains that "[c]ourts around the country have . . . held that [the] EFTA does not apply where, as here, the plaintiff herself claims no transfer agreement exists between the

parties." *Id.* at 7 (citing *Sharkey v. NAC Marketing Co.*, No. 12 C 4353, 2012 WL 5967409, at *3 (N.D. Ill. Nov. 28, 2012)).

Plaintiff counters that "[Section] 1693e(a) of the EFTA makes vendors like OnStar liable for failing to obtain the required agreement in the required form," Opp'n at 9 (emphasis omitted) (citing *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009); *DeForest v. Pepper Tree Inc.*, No. SACV 17-02092-CJC(JDEx), 2018 WL 1005300, *5 (C.D. Cal. Feb. 20, 2018); *Herman v. SeaWorld Parks & Entm't, Inc.*, No. 8:14-cv-3028-T-35JSS, 2017 WL 1376169, *7 (M.D. Fla. Apr. 17, 2017); *Kleiner v. Earthlink, Inc.*, No. 2:16-cv-1609-WHO, 2017 WL 345525, *3–4 (E.D. Cal. Jan. 24, 2017); *Starks v. Geico Indem. Co.*, No. CV-15-5771-MWF (PJW), 2015 WL 12942282, *4 (C.D. Cal. Nov. 10, 2015); *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1230–31 (D. Nev. 2011), *aff'd in part and vacated in part on other grounds*, 763 F.3d 1094 (9th Cir. 2014); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1182–83 (S.D. Cal. 2010); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1094 (N.D. Cal. 2006)), and "OnStar's argument rests on a misconstruction of the cited staff interpretation." *Id.*

Although the reasoning of *Sharkey* has superficial appeal, it is premised on an untenable misunderstanding of the EFTA. Citing Section 1693(a)(12), the district court in *Sharkey* claims that "at least one other section of the EFTA protects consumers from unauthorized electronic fund transfers initiated without the authority of the consumer." *Id.* at *3. Section 1693(a)(12), however, is the statutory definition of an "unauthorized electronic fund transfer," and no other provision of the EFTA holds accountable third parties who withdraw unauthorized electronic fund transfers from the account of a consumer. *Cf.* 15 U.S.C. § 1693c (requiring financial institutions to disclose to consumers consumers' liability for unauthorized electronic fund transfers); 15 U.S.C. § 1693f (regarding obligation of financial institutions to resolve errors, including unauthorized electronic fund transfers); 15 U.S.C. § 1693g (regarding liability of consumers for unauthorized electronic fund transfers). The Court therefore finds persuasive the reasoning of other courts that "whether a transfer is 'unauthorized' under § 1693a(12) only speaks to

the allocation of liability between the parties and has no bearing on a determination of whether there was a violation of § 1693e(a)." *Starks*, 2015 WL 12942282, at *5 (citing *Wike*, 566 F.3d at 594–95).

The only in-Circuit authority on which OnStar relies, *Merritt v. Yavone, LLC*, No. 6:15-CV-0269-TC, 2015 WL 9256682 (D. Or. Nov. 5), *report and recommendation adopted*, 2015 WL 9165898 (Dec. 15, 2015), is distinguishable. In *Merritt*, the plaintiff ordered a "free trial" of a weight loss product, authorizing a $5.00 charge for shipping and handling. *Id.* at *1. A month later, the defendants debited her bank account in the amount of $79.99. *Id.* Because Plaintiff did not allege that the transfers were recurring, the magistrate judge recommended that the plaintiff's EFTA claim be dismissed. *Id.* at *5. Here, by contrast, OnStar debited Plaintiff's account on a monthly basis. *See* Compl. ¶¶ 33–34.

Plaintiff's in-Circuit authorities are more persuasive and more in line with the purpose of the EFTA, which "is a remedial statute accorded 'a broad, liberal construction in favor of the consumer.'" *Simone v. M & M Fitness LLC*, No. CV-16-01229-PHX-JJT, 2017 WL 1318012, at *2 (D. Ariz. Apr. 10, 2017) (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998)); *accord Smith v. Bank of Haw.*, No. CV 16-00513 JAO-RLP, 2019 WL 404423, at *11 (D. Haw. Jan. 31, 2019) ("Congress intended for courts to broadly construe [CCPA's] provisions [like EFTA and TILA] in accordance with its remedial purpose.") (citing *Stout v. FreeScore, LLC*, 743 F.3d 680, 684 (9th Cir. 2014); *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008)). Courts therefore have allowed claims under the EFTA to proceed where, as here, *see* Compl. ¶¶ 25–37, "Plaintiff[] allege[s] that Defendant did not obtain any authorization, much less written authorization, prior to debiting [her] accounts on a recurring monthly basis." *DeForest*, 2018 WL 1005300, at *5; *accord Starks*, 2015 WL 12942282, at *4; *see also In re Easysaver Rewards Litig.*, 737 F. Supp. 2d at 1182 ("The electronic transfer of funds by consumers to purchase goods (at brick and mortar stores or over the internet) falls within the plain language of the statute and its governing regulations."); *Nordberg*, 445 F.

Supp. 2d at 1095 ("[P]laintiffs' allegations that defendant failed to secure authorization from plaintiffs is supported by the plain text of the EFTA and its implementing regulations."). The Court therefore concludes that Plaintiff's allegations are sufficient to demonstrate a violation of Section 1693e(a). Consequently, the Court **DENIES** OnStar's Motion as to Plaintiff's first cause of action for violation of the EFTA.

### B.   Second Cause of Action: Violation of the Automatic Renewal Law

Relying on *Johnson v. Pluralsight, LLC,* 728 Fed. App'x 674 (9th Cir. 2018), and *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058 (S.D. Cal. 2018), *see* Mot. at 9, OnStar argues that "[t]he Court should dismiss Plaintiff's second claim because private individuals cannot assert causes of action under California's Automatic Renewal Law." *Id.* at 8. Plaintiff counters that "the ARL plainly contemplates private enforcement by preserving 'all available civil remedies,'" Opp'n at 11, and "OnStar's two cited cases, neither of which is binding, are unpersuasive and should not be followed." *Id.* at 12. OnStar notes that Plaintiff cites no authority supporting that the ARL creates a private cause of action. *See* Reply at 3.

Although not binding, *see* 9th Cir. R. 36-3(a), the Court finds persuasive the Ninth Circuit's reasoning in *Johnson* and its holding that the ARL does not create a private action. *See* 728 Fed. App'x at 676; *see also Lopez*, 307 F. Supp. 3d at 1067–69. Accordingly, the Court **GRANTS** OnStar's Motion as to Plaintiff's second cause of action for violation of California's ARL.

### C.   Third and Fourth Causes of Action: Violation of the Unfair Competition Law

#### 1.   Plaintiff's Standing

A plaintiff has standing to sue under the UCL is she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *accord Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) ("To satisfy the . . . standing requirements [under the UCL] . . . , a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic*

*injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.") (emphasis in original).   OnStar does not appear to challenge that Plaintiff adequately has alleged economic harm, instead challenging only the sufficiency of Plaintiff's allegations concerning causation and reliance. *See* Mot. at 9–12.

a.   Causation

For purposes of standing under the UCL, "[t]he phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection." *Veera*, 6 Cal. App. 5th at 915–16 (quoting *Kwikset*, 51 Cal. 4th at 326–27).   OnStar contends that "Plaintiff's Unfair Competition Law claims fail because she fails to allege an injury 'as a result of unfair competition' . . . because it is clear that she knew of OnStar's billing practices[,] namely that her debit card would be charged after the expiration of the trial period[,] well before the charges in question were made."   Mot. at 9 (quoting *Kwikset Corp.*, 51 Cal. 4th at 321).   Plaintiff argues that OnStar's arguments concerning her purported knowledge hinge on facts alleged in OnStar's Answer on which the Court cannot rely for purposes of the instant Motion. *See* Opp'n at 13.   Further, "such facts cannot excuse a defendant's violations of other clear statutes requiring *earlier* disclosure in a different manner, nor strip away a plaintiff's UCL standing to assert those violations." *Id.* (emphasis in original) (citing *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 916–20 (2016); *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12 (2012)).

Based on the facts properly before the Court on this Motion,[3] *see supra* pages 1–6 & n.1, the Court concludes that Plaintiff has adequately alleged causation.   Plaintiff

---

[3] To be clear, the Court does *not* consider the October 14, 2014 email from OnStar, *see* Tr. at 75:9–83:10, 84:11–85:15, 96:7–101:13; ECF Nos. 35-5 ("Ex. 5"), 35-7 ("Ex. 8"), to which Mr. Nicholis Festa, OnStar's director of marketing, *see* Tr. at 46:20–47:2, testified at April 19, 2016 evidentiary hearing. Because Plaintiff did not testify to her receipt of the October 14, 2014 email, it is not a judicial admission binding as to her. *See, e.g.*, *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding *on the party who made them*.") (emphasis added).

received two emails in the months *after* she enrolled in OTS showing that her OnStar Subscription would expire on December 14, 2014, that she was enrolled in "Continuous Coverage," and that her "Hands-Free Calling" expired on "12/16/2014 (or when OnStar subscription ends, whichever comes first." *See* Exs. 10–11.  The emails provided no notice that OnStar would charge the debit card information it had retained from Plaintiff's purchase of minutes after expiration of the trial period, let alone the cost of those services. *See generally id.*  Similarly, the Terms and Conditions mailed to Plaintiff's home address— again, *after* she provided her debit card information to OnStar—indicate that Plaintiff would have to "arrange for payment to [OnStar] after th[e free trial] period of time expires" and that, "[i]f [Plaintiff] ha[d] a payment account on file with [OnStar], [it] w[ould] automatically start charging [Plaintiff] monthly." *See* Ex. 4.  When Plaintiff provided her debit card number to the OnStar agent to activate her free OTS trial period, Plaintiff was not told that her debit card would be kept on file by OnStar or used to pay for the continuance of OTS after the end of the free trial period.  *See* Compl. ¶¶ 22–32.  On this record and at this stage, the Court cannot conclude that "Plaintiff consented to being charged." *See* Mot. at 9.  Consequently, the Court concludes that Plaintiff adequately has alleged causation for purposes of standing for her UCL claims.

### b.    Reliance

Because "reliance is the causal mechanism of fraud," the California Supreme Court has required that "a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action [to] demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-established principles regarding the element of reliance in ordinary fraud actions." *Kwikset Corp.*, 51 Cal. 4th at 326–27 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 326 (2009)).  But "[a] consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010).  Consequently, a plaintiff "need not plead reliance [where] . . . the alleged . . . violation[s do not] require[] allegations of fraud

or deception." *Franz v. Beiersdorf, Inc.*, 745 F. App'x 47, 48 (9th Cir. 2018) (citing *Medrazo*, 205 Cal. App. 4th at 12 (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 326)); *accord Kwikset*, 51 Cal. 4th at 326 n.9 ("[W]e need express no views concerning the proper construction of the cause requirement in [non-fraud-based UCL] cases."); *In re Tobacco II Cases*, 46 Cal. 4th at 325 n.17 ("We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory . . . . There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application.").

OnStar claims that "Plaintiff must also plead reliance where, as here, the claims sound in some kind of deception," but that "Plaintiff never states that the alleged omissions or misrepresentations were an immediate cause of the injury, or that she did not want to have her subscription renewed automatically." Mot. at 10–11. Plaintiff counters that, "[i]n the 'unlawful' prong context, a plaintiff who paid a fee that the defendant was not authorized by law to charge (as here) has standing to assert that violation under the UCL" and "'reliance' is irrelevant to such statutory claims." Opp'n at 12–13 (citing *Lopez*, 307 F. Supp. 3d at 1070; *Ivanoff v. Bank of Am., N.A.*, 9 Cal. App. 5th 719, 732 (2017); *Medrazo*, 205 Cal. App. 4th at 11–14).

A review of Plaintiff's Complaint reveals that her allegations here do not sound in fraud and, consequently, the Court agrees with Plaintiff that she need not plead reliance to establish standing under the UCL. Fundamentally, Plaintiff's UCL claims are based on allegations that OnStar charged Plaintiff's debit card without her consent. *See, e.g.*, Compl. ¶¶ 77, 81, 92, 99, 105–07. Such claims "do not sound in fraud" and therefore do not "require reliance as to . . . allegations of causation." *See Kissel v. Code 42 Software, Inc.*, No. SACV151936JLSKESX, 2016 WL 7647691, at *8 (C.D. Cal. Apr. 14, 2016) (declining to require reliance for UCL claim based on violation of ARL). The Court therefore concludes that Plaintiff has adequately alleged standing to assert her UCL claims.

/ / /

/ / /

### 2.    Third Cause of Action: Unlawful Business Practices

"By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).   Plaintiff's claims under the unlawful prong of the UCL are predicated on violations of the EFTA; the ARL; the Telemarketing Sales Rule of the Federal Trade Commission, 16 C.F.R. §§ 310 *et seq.* ("TSR"); and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act").

### a.    Violations of the Electronic Funds Transfer Act

Having concluded that Plaintiff's allegations are sufficient to state a violation of the EFTA, *see supra* Section I.A, the Court concludes that Plaintiff's allegations are also sufficient to demonstrate a violation of the unlawful prong of the UCL. *See, e.g.*, *DeForest*, 2018 WL 1005300, at *3 n.2 ("Because Plaintiffs have sufficiently alleged an EFTA claim, they have also stated a claim under the 'unlawful prong' of the UCL."); *Cody v. SoulCycle Inc.*, No. CV156457GHKJEMX, 2016 WL 11129525, at *5 (C.D. Cal. Apr. 22, 2016) ("Plaintiffs have stated a plausible claim for violation of the EFTA. . . .   Thus, Plaintiffs have sufficiently stated a UCL claim based on unlawful business practices."); *Starks*, 2015 WL 12942282, at *5 ("Because Plaintiff has sufficiently alleged an EFTA claim, the 'unlawful prong' of their UCL claim advances.").   The Court therefore **DENIES** OnStar's Motion as to Plaintiff's third cause of action for violation of the unlawful prong of the UCL; however, because "[t]he purpose of a motion for judgment on the pleadings is to dispose of issues or unmeritorious controversies," *Provenzano v. United States*, 123 F. Supp. 2d 554, 556 (S.D. Cal. 2000) (citing *La Jolla Village Homeowners' Ass'n v. Super. Ct.*, 212 Cal. App. 3d 1131, 1140–41 (1989)), the Court also addresses whether Plaintiff's allegations are sufficient to state a claim based on a violation of the ARL, the TSR, and the FTC Act.

/ / /

b.      Violations of California's Automatic Renewal Law

Under the ARL, it is "unlawful for any business that makes an automatic renewal offer or continuous service offer to a consumer in this state to . . . [c]harge the consumer's credit or debit card . . . for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms."   Cal. Bus. & Prof. Code § 17602(a)(2).   But "[i]f a business complies with the provisions of this article in good faith, it shall not be subject to civil remedies."   Cal. Bus. & Prof. Code § 17604(b).

OnStar claims that its "good faith compliance immunizes [it], and renders the alleged Automatic Renewal Law violation unable to support a claim under the Unfair Competition Law."   Mot. at 13.   Plaintiff rejoins that "OnStar's 'good faith,' or lack thereof, is a fact-intensive question requiring discovery," Opp'n at 14, and, in any event, OnStar's Acknowledgment "form does not even come close to adhering to the ARL," *id.* at 15, because "[i]t plainly does not meet the font and typeface requirements of section 17601(c)"; "does not constitute an 'explicit' and 'affirmative consent' to the continuous service terms, as [section 17602(a)(2)] of the ARL requires"; and "does not state, in a 'clear and conspicuous manner[]' either the amount of the 'recurring' charges or a 'description of the cancellation policy[,]'" as required by sections 17601(b)(2) and (3) and 17602(a)(1). Opp'n at 15–16.

"[OnStar] has provided no case law in support of its argument that its actions complied in good faith with the requirements of the ARL, as laid out in section 17604(b)." *See Johnson*, 728 F. App'x at 677.   Further, at this stage, "[OnStar] cannot defeat a claim by referencing an affirmative defense not clearly established by the complaint, and on which [it] bear[s] the burden to demonstrate." *Price v. Synapse Grp., Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *7 (S.D. Cal. July 24, 2017) (citing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)).   Consequently, for purposes of this Motion, the Court determines that Plaintiff adequately has alleged that

/ / /

OnStar violated the provisions of the ARL for purposes of establishing a violation of the unlawful prong of the UCL.

c.    Violations of the FTC's Telemarketing Sales Rule

Pursuant to the TSR, "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to . . . fail[] to disclose truthfully, in a clear and conspicuous manner, . . . [t]he total costs to purchase, receive, or use . . . any . . . services . . . that are the subject of the sales offer . . . [or] the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s)."  16 C.F.R. §§ 310.3(a)(1)(i), (vii).  Further, "[i]t is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to . . . [c]aus[e] billing information to be submitted for payment . . . without the express informed consent of the customer" and, "[i]n any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer . . . to be charged for the goods or services . . . and to be charged using the identified account."  16 C.F.R. § 310.4(a)(7).  "Telephone calls initiated by a customer . . . that are not the result of any solicitation by a seller . . . or telemarketer" are "exempt from this Rule."  16 C.F.R. § 310.6(b)(4).  The TSR defines a "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer," 16 C.F.R. § 310.2(ff), and "telemarketing" as "a plan, program, or campaign which is conducted to induce the purchase of goods or services . . . by use of one or more telephones."  16 C.F.R. § 310.2(gg).  A "seller" is "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration."  16 C.F.R. § 310.2(dd).

OnStar argues that the TSR is inapplicable because "Plaintiff . . . initiated the call to OnStar" and the TSR "expressly exempts . . . telephone calls the customer initiated."  Mot. at 13 (citing 16 C.F.R. § 310.6(b)(4)).  Plaintiff counters that "the exemption applies ***only*** to customer-initiated calls that are "***not*** the result of ***<u>any solicitation</u>*** by a seller . . . or telemarketer."  Opp'n at 17 (citing 16 C.F.R. § 310(b)(4)).  Plaintiff notes that she alleges

17

that "OnStar *solicited* plaintiff and the class members to press the blue button and become OnStar registrants by offering them a 'free trial'" and that the exemption is therefore inapplicable. *Id.* (citing Compl. ¶¶ 15, 21–22).

Although Plaintiff alleges that she initiated the call to OnStar, *see* Compl. ¶ 22, she also alleges that she placed the call because the dealer of the Vehicle informed her that "to activate the one year of free OTS, she would have to register the Vehicle with OnStar from inside the Vehicle." *See id.* ¶ 21.  OnStar argues that this does not qualify as "solicitation" because "an unnamed employee at an independent, third party dealership, and not anyone connected with OnStar, informed Plaintiff' that she would have to register the Vehicle. Reply at 6.  And, even if there were solicitation, "Plaintiff's call was not a result of a solicitation by a 'seller'" because "any communications between the dealer and Plaintiff were, by definition, not 'in connection with a telemarketing transaction'" and "the dealer did not 'provide[], offer[] to provide, or arrange[] for others to provide' OnStar services." *Id.* at 6–7 (quoting 16 C.F.R. § 310.2(dd)) (citing *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 782 (N.D. Ill. 2016)).

OnStar cannot escape Plaintiff's allegations under the TSR so easily.  Plaintiff has alleged that OnStar is "a fully owned subsidiary of General Motors LLC," Compl. ¶ 6, and that "OTS equipment and software comes installed in most General Motors-manufactured vehicles, such as . . . Cadillac." *Id.* ¶ 17.  The "GM Customer Incentive and OnStar Acknowledgment" form signed by Plaintiff's husband is signed by an "Authorized Dealer" representative.  *See* Ex. 1-A.  At this stage, the Court therefore concludes that Plaintiff adequately has alleged that OnStar arranged for its own agents and others—namely, GM and its dealers—to provide OnStar's OTS.  *See, e.g.*, *FTC v. Stefanchik*, 559 F.3d 924, 930 (9th Cir. 2009) (affirming that defendant who entered into agreement with third party to conduct telemarketing sales for defendant was a seller under the TSR); *see also FTC v. MacGregor*, 360 F. App'x 891, 894 (9th Cir. 2009) (same).

Further, given the dearth of applicable authority, the Court is not prepared to conclude at this time that OnStar's solicitation through GM and its dealers was not "in

connection with" telemarketing.  Plaintiff alleges that the dealer told her to register the Vehicle for the OTS trial by pressing the blue button in the Vehicle, which connected Plaintiff to a live OnStar agent.  *See* Compl. ¶¶ 21–22.  During this call, the OnStar agent advertised and sold AT&T minutes to Plaintiff.  *See id.* ¶¶ 24–25.  Plaintiff adequately has alleged that OnStar indirectly solicited her to call its own agents, who operated as telemarketers and engaged in telemarketing under the TSR.  Consequently, the Court concludes that Plaintiff sufficiently has alleged that OnStar violated the TSR for purposes of Plaintiff's unlawful UCL claims.

### d.       Violations of the Federal Trade Commission Act

Under the FTC Act, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1).  "A violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of section 5(a) of the FTC Act." *FTC v. Lalonde*, 545 F. App'x 825, 840 (11th Cir. 2013) (15 U.S.C. §§ 57a(d)(3), 6102(c)); *accord Stefanchik*, 559 F.3d at 930 & n.17.  Because the Court has concluded that Plaintiff adequately has alleged a violation of the TSR,[4] the Court also concludes that she adequately has alleged a violation of Section 5(a) of the FTC Act for purposes of her claim under the unlawful prong of the UCL.

### 3.       Fourth Cause of Action: Unfair Business Practices

"[T]he proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (quoting *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007)); *accord Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).  Courts therefore apply one or more of three different tests for unfairness: the balancing test, *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th (1999); the tethering test, *Cel-Tech*, 20

---

[4] As discussed above, *see supra* pages 12–13 & note 3, the Court also concludes based on the record before it that Plaintiff's alleged injury was not "reasonably avoidable," as advocated by OnStar. *See* Mot. at 15.

Cal. 4th 163; and the Section 5 test, *Camacho v. Automobile Club*, 142 Cal. App. 4th 1394 (2006).  Compl. ¶ 104.

OnStar claims that "a growing number of both Federal and State courts have applied the Section 5 test, demonstrating an emerging consensus."  Mot. at 17 (citing *Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011); *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227, at *6 (S.D. Cal. Mar. 7, 2018); *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1026 (S.D. Cal. 2013); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839 (2006)).  Plaintiff does not advocate for any particular test.  *See* Compl. ¶¶ 104–07; *see also* Opp'n at 20–23.  The Court evaluates each of the tests in turn.

### a.   Section 5 Test

"[T]he factors that define unfairness under section 5 are: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  *Camacho*, 142 Cal. App. 4th at 1403 (2006) (*Orkin Exterminating Co. v. F.T.C.*, 849 F.2d 1354, 1364 (11th Cir. 1988)); *see also* 15 U.S.C. § 45(n).

Although OnStar advocates for use of the Section 5 test, *see* Mot. at 16–17, it appears that the Ninth Circuit has rejected application of the Section 5 test in recent consumer cases. *See, e.g.*, *Hodsdon*, 891 F.3d at 866 (applying *Cel-Tech* tethering test and *South Bay* balancing test to consumer claim under unfair prong of UCL regarding manufacturer's failure to disclose use of child and slave labor in supply chain); *Davis*, 691 F.3d at 1170 ("The question then is whether we are to apply the [tethering test] in *Cel-Tech,* or to follow the former balancing test under *South Bay*."); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010) (applying balancing and tethering tests); *Lozano*, 504 F.3d at 736 ("[W]e decline to apply the FTC standard in the absence of a clear holding from the California Supreme Court."); *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014) ("The Ninth Circuit has rejected the section 5 test in the consumer

context.") (citing *Lozano*, 504 F.3d at 736).  The Court therefore declines to apply the Section 5 test here.

b.   Balancing Test

Under the balancing test, "an 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *S. Bay Chevrolet*, 72 Cal. App. 4th at 886–87 (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)).  In applying this test, the Court must weigh the practice's "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer."  *Id.* at 886 (quoting *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103–04 (1996), *abrogated by Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th 163).  "In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Id.* (quoting *State Farm Fire & Cas. Co.*, 45 Cal. App. 4th at 1104).

OnStar claims that "Plaintiff reasonably knew and understood that OnStar would charge Plaintiff for the OnStar service, and Plaintiff received numerous forms of notice and warning concerning the charges," Mot. at 17 (citing Compl. ¶¶ 20–21; Ans. ¶¶ 3, 8–11), which "alone is enough to render Plaintiff's claim invalid."  *Id.* (citing *S. Bay Chevrolet*, 72 Cal. App. 4th at 887; *Davis*, 691 F.3d at 1170).  And "[t]he fact that OnStar's Terms and Conditions were readily available online further cautions against finding that any alleged lack of disclosure constituted unfair or immoral conduct."  *Id.* at 17–18 (citing *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1027 (N.D. Cal. 2016)).

Plaintiff, on the other hand, argues that the Complaint alleges that she did not know or understand that her debit card would be charged and, in any event, the notices and Terms and Conditions on which OnStar relies "did ***not*** adequately advise plaintiff that her debit card would be charged without her consent."  Opp'n at 22 (emphasis in original).  In any event, "failing to adequately disclose, or obtain informed consent to, monthly charges

/ / /

benefits neither consumers nor competition."  *Id.* at 20 (citing *FTC v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 WL 10654030, at *11 (W.D. Wash. July 22, 2016)).

Plaintiff's allegations suffice to demonstrate unfair conduct under the balancing test. As discussed above, *see supra* pages 12–13 & note 3, the Court cannot conclude based on the record before it that OnStar adequately advised Plaintiff that her debit card would be charged for continuation of OTS after the expiration of her free trial period.  And while the free trial of OTS may benefit consumers, *see* Mot. at 16, OnStar focuses on the wrong practice for purposes of this test:  Plaintiff alleges not that the free trial itself is unfair to consumers, but rather that OnStar's failure to obtain consumers' authorization or consent prior to charging their stored credit or debit cards for *continuation* of OTS past the free trial period is.  *See, e.g.*, Compl. ¶ 105.  Even if OTS itself and/or the free trial period has utility, OnStar's unauthorized charging of its consumers for continuation of that service does not.  *See Amazon.com, Inc.*, 2016 WL 10654030, at *10 ("[T]he 'benefit' of ensuring a streamlined experience is not incompatible with the practice of affirmatively seeking a customer's authorized consent to a charge.").  The Court therefore determines that Plaintiff adequately has alleged that OnStar engaged in an unfair business practice under the balancing test.

### c.      Tethering Test

Pursuant to the tethering test, "unfairness . . . under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 186–87.  Although *Cel-Tech* was limited to anticompetitive practices between competitors, *see id.*; *see also id.* at 187 n.12, "some courts in California have extended the *Cel-Tech* definition to consumer actions, while others have applied the old balancing test, or borrowed the three-pronged test set forth in the FTC Act."  *Davis*, 691 F.3d at 1170 (citing *Lozano*, 504 F.3d at 736; *Durell*, 183 Cal. App. 4th at 1364–66).

OnStar advocates that "Plaintiff does not allege that OnStar's conduct violates the 'letter, policy, or spirit of the antitrust laws, or that it harms competition,' which alone is

enough to find that no claim has been stated," Mot. at 18 (quoting *Davis*, 691 F.3d at 1170), and "Plaintiff also fails to identify how OnStar's conduct violates the policy or spirit of any law, and fails to identify what those policies and spirits are." *Id.* Plaintiff disputes that the tethering test is limited to antitrust law, noting that "[t]he test has been applied in cases in which a defendant's conduct violated the spirit or purpose of a wide range of laws." Opp'n at 21–22 (citing *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155–56 (2018); *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 806 (2013)). Plaintiff also notes that "[t]he complaint plainly alleges that OnStar violated the spirit, and the letter, of the EFTA, the ARL, the TSR, and the FTC Act—all of which are intended to prevent the very kind of deception in which OnStar engaged, namely, charging consumers' debit and credit cards without obtaining the consumers' prior express and informed consent." *Id.* at 22 (citing Compl. ¶¶ 52, 65, 84, 97, 106).

Here, Plaintiff adequately has alleged that OnStar violated the letter of several laws, including the EFTA, the ARL, and the TSR, *see supra* Sections I.A, I.C.2.a–c, as well as their underlying policies. *See* Compl. ¶¶ 52, 65, 84, 106. The Court therefore concludes that Plaintiff adequately has alleged that OnStar engaged in an unfair business practice under the unfair prong of the UCL. *See, e.g.*, *Lopez*, 307 F. Supp. 3d at 1073 (concluding that the plaintiff plausibly alleged a claim under the unfair prong of the UCL where he plausibly alleged that the defendant's conduct or practices violated the ARL); *Jenkins v. j2 Glob., Inc.*, No. CV139226DSFMRWX, 2014 WL 12687417, at *5 (C.D. Cal. May 23, 2014) (concluding that the plaintiffs stated a claim under the unfair prong of the UCL where they also stated actionable claims under the CLRA and ARL); *Chavez v. Bank of Am. Corp.*, No. C-10-0653 JCS, 2012 WL 1594272, at *8 (N.D. Cal. May 4, 2012) (concluding that the plaintiff stated a claim under the unfair prong of the UCL where he alleged that he was charged monthly for a credit monitoring service in which he did not enroll); *cf. Starks*, 2015 WL 12942282, at *7 (dismissing claim under unfair prong of UCL where the plaintiffs failed to allege violation of public policy behind EFTA in their operative

/ / /

complaint).  The Court therefore **DENIES** OnStar's Motion as to Plaintiff's fourth cause of action for violation of the unfair prong of the UCL.

## II.    Motion to Modify Class Allegations

Because the Court has declined OnStar's Motion to dismiss Plaintiff's EFTA claims, *see supra* Section I.A, OnStar requests that the Court "delete allegations involving class members residing outside of the state of California" and "eliminate claims under EFTA seeking actual damages."  Mot. at 19.

### A.    Nationwide Class Allegations

Relying on *Bristol-Myers Squibb Company v. Superior Court*, 137 S. Ct. 1773, 1776 (2017), OnStar argues that it "is not subject to personal jurisdiction with respect to the claims of the unnamed class members who reside outside of California, and those class allegations should be dismissed."  Mot. at 19.  Plaintiff rejoins that "OnStar waived this defense by failing to raise it in its original and amended Rule 12(b) motions," Opp'n at 23, and, "[e]ven if OnStar had not waived its personal jurisdiction defense, the defense fails because *Bristol-Myers* does not apply to federal courts, and even if it did, it does not apply to federal-question cases specifically."  *Id.* at 24 (citing *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1172–73 (S.D. Cal. 2018); *In re Morning Song Bird Food Litig.*, No. 12-CV-1592 JAH (AGS), 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018)).

"District courts in this circuit regularly deny motions to strike class allegations as premature."  *Brown v. DIRECTV, LLC*, No. CV1301170DMGCFEX, 2014 WL 12599363, at *2 (C.D. Cal. May 27, 2014) (collecting cases); *see also Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1196 (N.D. Cal. 2018) (motion to strike nationwide class allegations as premature); *Montemayor v. GC Servs. LP*, 302 F.R.D. 581, 588 (S.D. Cal. 2014) (concluding that motion to strike class allegations based on failure to meet commonality and predominance requirements because "[t]he issue is better address[ed] during a motion for class certification"); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("[W]hile there is little authority on this issue within the Ninth

Circuit, decisions from courts in other jurisdictions have made clear that dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.") (internal quotation marks omitted) (collecting cases). Accordingly, the Court **DENIES WITHOUT PREJUDICE** OnStar's Motion insofar as it relates to Plaintiff's nationwide class allegations.

### B.    *Actual Damages Allegations*

OnStar additionally contends that "Plaintiff's EFTA class is improper to the extent it seeks actual damages" because "EFTA allows for recovery of actual damages only to the extent that a consumer sustained damages 'as a result of' violations of EFTA," which "[c]ourts routinely interpret . . . as requiring consumers to show injury, detrimental reliance, and causation."  Mot. at 23 (citing *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. CV 6:15-MN-2613-BHH, 2018 WL 1003548, at *26 (D.S.C. Feb. 22, 2018); *Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 447 (D. Minn. 2012); *Stilz v. Glob. Cash Network, Inc.*, No. 10 CV 1998, 2010 WL 3975588, at *5 (N.D. Ill. Oct. 7, 2010); *Martz v. PNC Bank, N.A.*, No. CIV.A.06-1075, 2007 WL 2343800, at *8 (W.D. Pa. Aug. 15, 2007)).  Consequently, "numerous courts have held that class actions cannot be maintained for actual damages."  *Id.* at 24–25 (citing *In re TD Bank*, 2018 WL 1003548, at *28; *Mabary v. Hometown Bank, N.A.*, 888 F. Supp. 2d 857, 860 (S.D. Tex. 2012); *Brown v. Wells Fargo & Co.*, 284 F.R.D. at 447; *Martz*, 2007 WL 2343800, at *8).

Plaintiff does not appear to object, arguing only that "[c]laims for EFTA statutory damages are routinely certified for class treatment" and, "if discovery shows that OnStar's EFTA violations are ongoing, plaintiffs will seek injunctive relief."  Opp'n at 25 (citing *Kemply v. Cashcall, Inc.*, No. 08-CV-03174-MEJ, 2016 WL 1055251, at *15–18 (N.D. Cal. Mar. 16), *stricken in part on other grounds*, 2016 WL 6892693 (Nov. 23, 2016)).  Because the parties appear to agree that Plaintiff cannot seek actual damages on a class-wide basis, the Court **GRANTS** OnStar's Motion and **STRIKES** Plaintiff's class claim for actual damages under the EFTA.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion (ECF No. 73).  Specifically, the Court **DENIES** Defendant's Motion as to Plaintiffs first, third, and fourth causes of action; **DENIES WITHOUT PREJUDICE** Defendant's Motion as to Plaintiff's nationwide class allegations; and **GRANTS** Defendant's Motion as to Plaintiff's second cause of action and class claim for actual damages under the EFTA.

**IT IS SO ORDERED.**

Dated:  March 18, 2019

Hon. Janis L. Sammartino
United States District Judge

15-CV-1731 JLS (BGS)